In the Matter of the Application of SANTINI BROS., INC., Petitioner, for an Order against MILO R. MALTBIE and Others, Together Constituting and Composing the Public Service Commission of the State of New York, Respondents.

Third Department, November 13, 1940.

*Louis B. Bruman,* for the petitioner.

*Gay H. Brown* [*Sherman C. Ward* and *Sidney Kabalkin* of counsel], for the respondents.

HEFFERNAN, J. Petitioner, a domestic corporation, has been engaged in the trucking business since its incorporation in 1913.

By chapter 543 of the Laws of 1938 the Public Service Law was amended by adding article 3-B which granted to the Public Service Commission jurisdiction over motor carriers transporting property for compensation. This article provides that no common carrier by motor vehicle shall engage in the transportation of property on any public highway in the State unless there is in force with respect to such carrier a certificate of public convenience and necessity issued by the Commission (§ 63-k).

The article further provides that such a certificate shall issue to all qualified applicants when the Commission finds that the applicant is fit, willing and able properly to perform the proposed service and that the proposed service is or will be required by the present or future public convenience and necessity (§ 63-l). However, for the protection of present operators section 63-k in part provides: " if any such carrier or a predecessor in interest was in *bona fide* operation as a common carrier by motor vehicle on February first, nineteen hundred thirty-eight, over the route or routes or within the territory for which application is made, and has so operated since that time * * * the Commission shall issue such certificate without requiring further proof that public convenience and necessity will be served by such operation, and without further proceedings if application for such certificate is made to the Commission as provided in paragraph two of this section and within one hundred and twenty days after this section shall take effect."

It should be noted that the quoted provision of the statute requires applicants claiming " grandfather " rights to file petitions with the Commission on or before October 29, 1938. In compliance with this requirement 4,378 truck operators filed such petitions.

The Commission determined that until it had acted upon all applications by existing operators it would not consider new ones. The Commission was of the opinion that until it was known what service was being provided in a given territory by present operators it would be impossible to ascertain whether public convenience and necessity required additional service in such territory. In considering the petitions of those favored by the statute the Commission limited the inquiry to the single question, namely, were the applicants or their predecessors in interest in *bona fide* operation as common carriers on February 1, 1938, over the route or routes or within the territory for which applications were made, and had

such applicants continued in such service. No question of convenience and necessity was considered by the Commission, nor was any consideration given to the question as to whether the applicants were fit, willing and able to perform the service.

In order to determine the procedure which it should adopt the Commission was faced with the problem of a construction of the new statute. The first provision requiring construction is that portion of section 63-k which grants to certain operators " grandfather " rights. This exception limits such rights to an operator " in *bona fide* operation as a common carrier by motor vehicle on February first, nineteen hundred thirty-eight."

Although the statute requires that the operator show that he was in operation on February 1, 1938, within the territory for which application was made the Commission held that it could not have been the intention of the Legislature to require an operator to prove that he traveled to every point on that particular day. In determining what was a reasonable time in which operations might be shown the Commission decided that a common carrier of household goods would be granted a certificate covering the territory actually served by him at any time covering the period between January 1, 1936, and February 1, 1938. If an operator could show that he had made a single trip during that period the Commission held that it was sufficient to establish *bona fide* operation to the territory so served.

Another provision of this statute requiring construction is that providing for the granting of a certificate without proof of convenience and necessity to a carrier who was in *bona fide* operation " within the territory for which application is made " when the statute became effective. In considering what territory should be included in the certificate the Commission adopted counties as the unit. The reasons for this determination are set forth in a memorandum of the Commission's chairman from which the following quotation is taken: " The Commission has endeavored to apply the principle and not merely the letter of the grandfather clause, having in mind not only our present action but the enforcement of the obligations resting upon a common carrier after a certificate has been granted. For example, if the proof shows that a carrier has been operating between Albany and Syracuse, not stopping at intermediate points or at any other points in Onondaga and Albany Counties, a certificate will be granted to carry between Albany and Syracuse, particularly if the nature of the commodity carried is such that it originates at certain definite points in Albany and Syracuse and is always delivered at certain definite points in the other city. Generally, however, if the proof shows that shipments have sometimes originated in Albany County outside of the City of

Albany and have been destined to points in Onondaga County outside of the City of Syracuse and *vice versa*, authority will be granted for transportation between all points in Albany County and all points in Onondaga County. In other words, where the facts justify, the Commission has decided to recognize the county as the local area unit for the authorization of rights and the enforcement of obligations. The law does not provide that the county shall be the unit of territory used; but in assigning territory, consideration must be given to some practicable basis. The use of village and town boundaries would cause great confusion and render enforcement very difficult. Counties are large areas, but they seem to furnish the most practicable boundaries. Perhaps they are generally too large, but the recipients certainly have no fair ground of criticism."

The Commission also had to determine whether or not the new statute authorized a present operator to carry property on return trips when he had failed to show that he had theretofore conducted such business. The Commission held that the statute did not authorize such transportation without proof of its convenience and necessity.

On October 28, 1938, petitioner filed with the Public Service Commission an application for a certificate of public convenience and necessity to operate as a common carrier of property by motor vehicle, alleging that it had been in *bona fide* operation as such common carrier on February 1, 1938.

Thereafter the Commission notified petitioner that the statute required it to show that it or its predecessor was in *bona fide* operation on February 1, 1938, over the route or routes or within the territory for which the application was made, and that, inasmuch as its application failed to establish these facts, it would be given a hearing at which it would have opportunity to supplement its proof. Subsequently a hearing was held and proofs were submitted by petitioner.

On December 14, 1939, the Commission by order granted to petitioner a certificate for the territory in which operations had been established. That is one of the orders under review. Thereafter petitioner applied for a rehearing and an order was made denying the application. That order is also the subject of review.

It is conceded that the certificate granted petitioner authorizes the continuation of every operation which it had conducted at any time between January 1, 1936, and February 1, 1938.

Petitioner contends that the Public Service Commission erred in limiting its certificate to operations actually conducted between January 1, 1936, and February 1, 1938, in adopting counties as the unit in fixing points of origin and destination, and in confining

its certificate to service actually performed by it. These contention are without merit.

In our opinion the construction given to these various provisions of the statute by the Commission is eminently fair, reasonable and equitable.

Petitioner argues that if, at any time since its incorporation, whether within or without the two-year period prior to February 1, 1938, it had transported a single load of furniture from one section of the State to another section, the Commission should have classified it as in *bona fide* operation over that particular route on February 1, 1938. It asserts that as applied to household movers the statute should be given a different construction from that applied to general truckers. The answer to that argument is that the Legislature made no such distinction. Under the statute all operators must be treated alike.

The contention of petitioner that the Commission erred in adopting counties as the unit and that the certificate issued to it should have been State-wide, is based on the argument that at the hearing held on its application it submitted proof that it was ready and willing to act as a carrier to all points in the State.

The Federal courts in numerous cases in considering the Federal act, which is somewhat similar to our own, rejected this argument and definitely held that the holding out to conduct transportation without actual transportation is not sufficient to show that the operator was in *bona fide* operation.

In *McDonald* v. *Thompson* (305 U. S. 263) Mr. Justice BUTLER, speaking for the court, said: " The expression, ' in bona fide operation,' suggests absence of evasion, excludes the idea that mere ability to serve as a common carrier is enough, includes actual rather than potential or simulated service * * *." And again in *Loving* v. *United States* (32 F. Supp. 464): " It is contended by plaintiffs that a carrier in bona fide operation as a common carrier by motor vehicle means that a permit shall be granted to any carrier who has [theretofore] assumed the obligations of a common carrier, and that a carrier who has held himself out as a common carrier is entitled to a certificate under the ' grandfather ' provision authorizing his continued operations as a common carrier of all commodities, and over all routes, and within all territories which he assumed to serve * * *." The court refused to follow this contention of the plaintiffs, stating that the United States Supreme Court had settled this matter, and then held: " We must, therefore, reject the contention of plaintiffs that the mere ability to serve, as well as the holding out to the public to carry for hire, is sufficient to satisfy the requirement of the statute that a carrier must be in bona fide operation on and prior to June 1, 1935. We believe that

bona fide operation includes actual operations conducted and carried on by a carrier prior to June 1, 1935, and subsequent thereto. * * * ''

Petitioner urges the economic advantages of authorizing a furniture mover to engage in return movements and to transport furniture between intermediate points. It is undisputed that petitioner did not carry furniture on return trips except from points authorized in its certificate. Its argument in this regard might be convincing in establishing public convenience and necessity in the event that it should apply for extended operations. That question, however, is not now before us.

In considering the questions involved in this proceeding it must be remembered that the statute relieves an operator who was in business on February 1, 1938, from the necessity of proving any public convenience and necessity. Such an operator is given rights that are not conferred on other carriers.

It should also be remembered that the denial by the Commission of " grandfather " rights to territory not previously served does not foreclose the operator from securing such extended rights if he is in a position to establish that such extended service is required by public convenience and necessity. The statute definitely provides that an operator who proposes to serve new territory may file an application for a certificate of convenience and necessity authorizing such operation. On such an application the applicant would be entitled to show that he has prior to the " grandfather " period served the territory or to introduce evidence to show that as under his certificate he is entitled to transport property from one community to another, public convenience and necessity would be served if he were authorized to carry property on his return trips.

The determination of the Commission should be confirmed, with fifty dollars costs and disbursements.

CRAPSER, BLISS and FOSTER, JJ., concur; HILL, P. J., concurs in the result. The trips permitted from New York city to counties the entire distance across the State upon which the petitioner is not allowed to carry loads upon the return trips and to and from intervening points are uneconomical and impractical. It seems to me that the statute is sufficiently broad to have permitted grants under the " grandfather clause " more in accordance with the practical side of household furniture transportation. The impracticability of the determination does not amount to arbitrariness and this court may not substitute its judgment for that of the Public Service Commission. I, therefore, concur in the result for confirmation.

Determination confirmed, with fifty dollars costs and disbursements.